IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| FARRELL G. KELLY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case 1:26-cv-01000-JDB-tmp |
| | ) | |
| CAROLYN SANGSTER, *et al.*, | ) | |
| Defendants. | ) | |

ORDER CONSOLIDATING COMPLAINT,
DIRECTING CLERK TO MODIFY DOCKET,
DISMISSING CONSOLIDATED COMPLAINT WITHOUT PREJUDICE,
GRANTING LEAVE TO AMEND,
DISMISSING REQUEST FOR RELEASE WITHOUT PREJUDICE,
DENYING REQUESTS FOR INJUNCTIVE RELIEF,
AND
DENYING MOTIONS FOR SUBPOENA, SUMMARY JUDGMENT, TRIAL DATE, AND
DECLARATORY JUDGMENT

## I.  INTRODUCTION

On January 2, 2026, the Plaintiff, Farrell G. Kelly, booking number 12973, who is currently incarcerated at the Haywood County Jail ("HCJ") in Brownsville, Tennessee, filed a pro se civil complaint pursuant to 42 U.S.C. § 1983.  (Docket Entry ("D.E.") 1.)  On February 12, 2026, he moved for leave to proceed in forma pauperis ("IFP").  (D.E. 4.)  On February 17, 2026, he filed an amended complaint.  (D.E. 7.)  The following day, the Court granted leave to proceed IFP, assessed the $350 filing fee in accordance with the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915, *et seq*, and granted leave to amend.  (D.E. 6.)  Kelly filed another amended pleading on March 4, 2026.  (D.E. 8.)  On March 18, 2026, he moved for a subpoena regarding his

medical records, summary judgment, and a trial date, (D.E. 10) and, on April 27, 2026, for declaratory judgment (D.E. 11).

The Court CONSOLIDATES the complaints for the purpose of screening Plaintiff's claims pursuant to the PLRA. The consolidated complaint is construed to assert constitutional claims based on various conditions of confinement the inmate has experienced at the HCJ. For the reasons explained below, the consolidated pleading is DISMISSED WITHOUT PREJUDICE and leave to amend is GRANTED. Docket entries 10 and 11 are DENIED.

## II. FACTUAL ALLEGATIONS

The consolidated complaint alleges as follows. Since being booked into the HCJ, Plaintiff has lost thirty-five pounds[1] and is "losing strength." (D.E. 1 at PageID 1.) The prison diet "lacks sustenance and substantial nutrition" and the inmate believes he is allergic to preservatives in the hot dogs and bologna as "they cause [him] great intestinal distress." (*Id.* at PageID 1-2.) Defendant Carolyn Sangster "intentionally feeds [inmates] far less than even a child would need to feel full." (*Id.*) Kelly cannot supplement his diet with additional food because he is indigent.

The HCJ medical department discontinued his Tylenol 3 and, apparently, hydrocodone, which he had been prescribed for approximately fifteen years. He is in pain, is suffering from stomach aches and nausea, and experiences mental anxiety. His cane was taken away, even though "younger more able-bodied inmates are supplied with [a] cane or walker." (*Id.* at PageID 3.) He believes he "need[s] narcotic relief." (*Id.*)

The inmate is housed in the same unit "as alleged and confirmed sexual predators, violent criminals[,] and a motley crew of alleged criminals." (*Id.*) HIV is "rampant in the area" and he

---

[1]Kelly alleges elsewhere that he has lost over seventy-two pounds.

2

fears being exposed to HIV in his daily activity as "an elderly man who is homosexual." (*Id.*) He has requested a prescription for PreP. He has not been offered a flu shot even though he is susceptible to contracting flu.

According to Plaintiff, Defendant Corporal Maurie Taylor "tries to prevent trading of food from trays though some items may be against inmates['] religious diet . . . or make an inmate ill"; he has "not been given a tablet to use as a white inmate, but others are provided them free of charge, those who are associated with gang members especially"; he has "to stand with [his] bad hip, bad knees, and his right foot and ankle (which were broken and the cold causes [him] pain in them) to read the law library on a kiosk"; his "right to a law library is impeded by [his] handicap and lack of a tablet"; and sex offender-type inmates "pick on and threaten [him] with violence" to the point he "fear[s] that one of them will assault [him,] an elderly man." (*Id.* at PageID 4-5.) He will not use the grievance process to ask for protection, as he fears "isolation or being moved to an open pod where [he would] be victimized due to [his] age and [naïve] ways." (*Id.* at PageID 6.) Plaintiff "do[es] not believe that any of the milk or juice [inmates] are provided is mixed in proportion so as to meet the values nutritionally declared to be being provided"; the "portions are small"; and, because he weighs over 200 pounds, he "obviously need[s] more not less food than a local crackhead who was able to bond out." (*Id.* at PageID 6-7).

He claims the "allegations against [him] are ludicrous" and that his "bond exceeds [his] ability to pay"; he has not been provided an inmate identification number and cannot "make calls to the outside world like family and friends"; he is "prevented from having adequate access to [his] defense counsel with lack of ability to use the phone"; and Defendants Lieutenant FNU Tyus, Lieutenant FNU Green, Captain Tonya Fisher, and Chief FNU Smith "are to be held responsible for this directly." (*Id.* at PageID 7-8.) Defendant Sheriff Billy Garrett is also responsible as "their

superior and the primary officer of the County." (*Id.* at PageID 8.)  This has led to "an obvious defect in the proceedings in the Circuit Court of Haywood County against [him because he has] never spoken with [his] attorney of record to date at all." (*Id.*)

Plaintiff is also unable to go outside; is allergic to fluoride; was placed on a vegetarian diet as "a seemingly punitive action" by healthcare staff; was assaulted by inmate James Kerr but "proceedings against him have not been had despite [Kelly's] request forms"; was stolen from and bullied by other inmates about his "sexual orientation and place of origin"; was verbally abused by staff; and was denied requests for assistance in trimming his toenails.  (D.E. 8 at PageID 42.) He appears to suggest that the HCJ should give whole milk to inmates because it "contains all the essential amino acids for a person to live on" and that the Court should consider taking all coffee out of the facility because it is sprayed with DDT.  (D.E. 7 at PageID 40.)

Plaintiff sues the Haywood County Board of Commissioners (the "Board"), as well as the following HCJ staff members:  Sangster; Smith; Fisher; Taylor; Tyus; Green; Garrett; Sergeants FNU Caldwell, Griffin, and Pike; and Registered Nurse Brenda LNU.  He seeks "monetary damages for emotional trauma and physical and mental stress in [an] amount to be determined by a jury if the Court decides to grant damages," as well as injunctive relief in the form of immunizations and preventative care "at least equal to what would be given in a free world setting"; the discrimination "due to age, race, and sexual orientation to be put in check"; a diet that does not make him sick or cause him to lose weight; "a class for inmates and staff concerning acceptance of differences in social settings"; "a system marking inmates with communicable diseases" to be instated; an inmate identification number; and release from the HCJ.  (D.E. 1 at PageID 11-12.)  He also moves for a declaratory judgment.  (D.E. 11.)

4

III.  SCREENING

A.    <u>Legal Standard.</u>

The Court must screen prisoner complaints and dismiss any complaint, or any portion of it, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether a complaint states a claim on which relief may be granted, the district court applies the standards under Federal Rule of Civil Procedure 12(b)(6) as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007).  *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).  Under these standards, the district court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief."  *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681).  The district court does not assume that conclusory allegations are true, because they are not "factual," and all legal conclusions in a complaint "must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679.  Federal Rule of Civil Procedure 8 provides guidance on this issue.  Although the rule requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), it also requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief."  *Twombly*, 550 U.S. at 555 n.3.

District courts screening cases afford more deference to pro se complaints than to those drafted by lawyers.  *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)) ("Pro se complaints are to be held 'to less stringent standards than formal pleadings

5

drafted by lawyers,' and should therefore be liberally construed."). Pro se litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612-13 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) ("a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'").

B.    Requirements to State a Claim Under § 1983.

To state a claim under § 1983, a plaintiff must allege (1) a deprivation of rights secured by the "Constitution and laws" of the United States and (2) that a defendant caused the constitutional harm while acting under color of state law. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150 (1970).

IV.  ANALYSIS

A.    Request for Release.

Release is not a form of relief available under § 1983. Where a prisoner challenges "the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Plaintiff's request for release is therefore DISMISSED WITHOUT PREJUDICE to his right to seek such relief via a petition for a writ of habeas corpus.

B.    Claims Against the Board and Official-Capacity Claims.

The consolidated complaint is silent about whether Kelly sues the Individual Defendants[2] in their individual or official capacities. It is preferable that a plaintiff state explicitly whether a

---

[2]The Court uses "Individual Defendants" when collectively referring to Sangster, Smith, Fisher, Taylor, Tyus, Green, Garrett, Caldwell, Griffin, Pike, and Brenda.

6

defendant is sued in his or her individual capacity, but the failure to do so is not fatal if the "course of proceedings" test demonstrates that the defendant received sufficient notice that the intent was to hold him or her personally liable. *See Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001). The Sixth Circuit has applied the test to determine whether § 1983 defendants have received notice of a plaintiff's intent to hold them personally liable. *See id.* at 773; *see also Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (noting that the "course of proceedings" in unspecified capacity cases "typically will indicate the nature of the liability sought to be imposed"); *Rashada v. Flegel*, No. 23-1674, 2024 WL 1367436, at *2 (6th Cir. Apr. 1, 2024). The "course of proceedings" test considers the nature of a plaintiff's claims, requests for compensatory or punitive damages, the nature of any defenses raised in response to the complaint, and whether subsequent filings put a defendant on notice of the capacity in which he or she is sued. *Moore*, 272 F.3d at 772 n.1 (citing *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995)).

Plaintiff refers to the Individual Defendants by their official titles and seeks relief based on their failure to perform tasks within the scope of their official capacities as employees at the HCJ. He also requests unspecified compensation, declaratory judgment, and various forms of injunctive relief. Based on these factors, the Court construes Kelly's claims against the Individual Defendants to be official-capacity claims.

The official-capacity claims against the Individual Defendants, as well as Kelly's claims against the Board, are treated as claims against their employer. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Here, that employer is Haywood County. The Clerk SHALL modify the docket to add Haywood County as a Defendant.

Haywood County (the "County") may be held liable only if Plaintiff's injuries were sustained pursuant to an unconstitutional custom or policy. *See Monell v. Dep't. of Soc. Servs. of*

7

*City of New York*, 436 U.S. 658, 691-92 (1978).  To demonstrate municipal liability, a plaintiff

"must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and

(3) show that his particular injury was incurred due to execution of that policy."  *Alkire v. Irving*,

330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th

Cir. 1993)).  "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the

*municipality* from acts of *employees* of the municipality, and thereby make clear that municipal

liability is limited to action for which the municipality is actually responsible.'"  *City of St. Louis

v. Praprotnik*, 485 U.S. 112, 138 (1988) (Brennan, J., concurring) (quoting *Pembaur v. Cincinnati*,

475 U.S. 469, 479-80 (1986)).

Plaintiff references "[n]egligent hiring practices."  (D.E. 1 at PageID 6.)  A prisoner may

claim a municipal or company policy or custom by alleging that the county or company's training

policies failed to teach officers and staff adequately about how to avoid the unconstitutional failure

to protect inmates.  *See Coleman v. Hamilton Cnty. Bd. of Comm'rs*, 130 F.4th 593, 600 (6th Cir.

2025); *see also Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (a plaintiff may establish a

claim against a political subdivision by showing a policy of inadequate training).  "[A]

municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on

a failure to train."  *Berry v. Delaware Cnty. Sheriff's Office*, 796 F. App'x 857, 861 (6th Cir. 2019)

(citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).  The failure to train must rise to the level

of "deliberate indifference" to constitute a policy or custom actionable under § 1983.  *See Connick*,

563 U.S at 61 (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

To properly allege a failure to train, a plaintiff must show "(1) that a training program is

inadequate to the tasks the officers must perform; (2) that the inadequacy is the result of the

[municipality's] deliberate indifference; and (3) that the inadequacy is closely related to or actually

8

caused the plaintiff's injury." *Brown v. Chapman*, 814 F.3d 447, 463 (6th Cir. 2016) (quoting *Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008)); *see also Winkler v. Madison Cnty.*, 893 F.3d 877, 902 (6th Cir. 2018).  Failure-to-train liability depends on the substance of the training.  *See Howell v. NaphCare, Inc.*, 67 F.4th 302, 320 (6th Cir. 2023), *cert. dismissed sub nom. Erwin v. Howell*, 145 S. Ct. 110 (2024).

Plaintiff's conclusory, barebones allegation that the County engages in negligent hiring practices is insufficient to plead failure-to-train liability.  *See Iqbal*, 556 U.S. at 679; *see also Grote v. Kenton Cnty., Ky.*, 85 F.4th 397, 415 (6th Cir. 2023) (denying relief against county where plaintiff did "not explain how the officers' training was deficient or how such training would have made the possibility of a constitutional violation obvious"), *reh'g en banc denied*, 2023 WL 8687002 (6th Cir. Dec. 6, 2023).  He alleges no facts regarding the County's hiring and training of employees, much less facts showing that such hiring and training practices are inadequate.  For these reasons, Kelly's claims against the County, the Board, and his official-capacity claims against the Individual Defendants are DISMISSED WITHOUT PREJUDICE for failure to allege facts stating a claim to relief.

C.     Requests for Injunctive Relief.

Plaintiff requests various forms of injunctive relief regarding practices and procedures at the HCJ.  The operation of correctional facilities is "peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial."  *Bell v. Wolfish*, 441 U.S. 520, 548 (1979).  The Court will not intervene to grant relief that affects the daily operations and administration of the HCJ.  Accordingly, Kelly's requests for injunctive relief are DENIED.

9

## V.  PENDING MOTIONS

A.      <u>Motion for Subpoena, Summary Judgment, and Trial Date.</u>

Because the consolidated complaint has been dismissed without prejudice, this motion is premature.  Accordingly, it is DENIED.

B.      <u>Motion for Declaratory Judgment.</u>

Plaintiff is not entitled to declaratory judgment at this time.  The motion is DENIED.

## VI.  AMENDMENT UNDER THE PLRA

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a sua sponte dismissal under the PLRA.  *Lucas v. Chalk*, 785 F. App'x 288, 291 (6th Cir. 2019) (citing *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[W]e hold, like every other circuit to have reached the issue, that under [Fed. R. Civ. P.] 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA")); *see also Brown v. Rhode Island*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded").  However, leave to amend is not required where a deficiency cannot be cured.  *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every sua sponte dismissal entered without prior notice to the plaintiff automatically must be reversed.  If it is crystal clear that . . . amending the complaint would be futile, then a sua sponte dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts").

The Court grants Plaintiff leave to amend under the guidelines set forth below.

10

VII.  CONCLUSION

For the reasons set forth above:

A.  The request for release is DISMISSED WITHOUT PREJUDICE to Plaintiff's right to seek such relief via a petition for a writ of habeas corpus.

B.  The consolidated complaint is DISMISSED WITHOUT PREJUDICE for failure to allege facts stating a claim to relief.

C.  The requests for injunctive relief are DENIED.

D.  The motions for subpoena, summary judgment, trial date, and declaratory judgment (D.E. 10, 11) are DENIED.

E.  Leave to amend the claims dismissed without prejudice is GRANTED.  Amended claims must be filed within twenty-one days after the date of this order.  An amended pleading must comply with the Federal Rules of Civil Procedure, including but not limited to Rule 8's requirement of a short and plain statement of Plaintiff's claims.  An amended complaint supersedes the original complaint and must be complete in itself without reference to the prior pleadings.  Plaintiff must sign the amended complaint and the text thereof must allege sufficient facts to support each claim without reference to any extraneous document.  Any exhibits must be identified by number in the text of the amended pleading and must be attached to the complaint.  All claims alleged in an amended complaint must arise from the facts alleged in the original pleading.  Each claim for relief must be stated in a separate count and must identify each Defendant sued in that count.  If Plaintiff fails to comply with Rule 8 and the Court's instructions for pleading amended claims, the Court will dismiss improperly pleaded amended claims with prejudice.

F.  If Plaintiff fails to file an amended complaint within the time specified, the Court will dismiss the case with prejudice and enter judgment.  The Court recommends that any such

11

dismissal should be treated as a strike pursuant to 28 U.S.C. § 1915(g). *See Simons v. Washington*, 996 F.3d 350, 353 (6th Cir. 2021).

G.      If Plaintiff is transferred to a different prison or released, he is ORDERED to notify the Court immediately, in writing, of his change of address. If he fails to abide by these or any other requirements of this order, the Court may impose appropriate sanctions, up to and including dismissal of this action, without any additional notice or hearing by the Court.

IT IS SO ORDERED this 27th day of July 2026.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE